# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**JAMES WARREN**                                                                                  **PLAINTIFF**

**V.**                                                                                 **CASE NO. 1:07CV70**

**CITY OF TUPELO, MISSISSIPPI**                                             **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court on the motion [40] of the defendant, City of Tupelo, Mississippi ("Tupelo"), seeking summary judgment.

### Facts

Plaintiff, James Warren, is an operations serviceman in Tupelo's Water & Light Department. Warren began working for Tupelo in 1968. At that time he was employed as a groundman on a line crew. Until 1995, he continued to work on a line crew. Many of those years were spent as a journeyman lineman.[1] In 1995, Warren began his current position. While working as an operations serviceman, Warren continued to serve as an on-call lineman. As such he responded to calls five to ten times per year.

On April, 18, 2006, the Tupelo Walter & Light Department posted a job opening for two line crew foreman positions. There were six internal applicants, including Warren, for the two positions. In order to narrow the applicant pool, Johnny Timmons, the department manager, requested that three department supervisors evaluate the applicants. The evaluators were the electrial superintendent and two of the department's three line crew foremen. The evaluations

---

[1] It is unclear exactly how many years experience Warren had as a journeyman lineman. It is undisputed that he had more than ten years of experience.

consisted solely of the evaluators' personal knowledge of each applicant. The three evaluators gave conflicting and often inarticulate reasons for their evaluation scores. Based on the evaluation scores, Timmons interviewed three candidates. Warren received the lowest evaluation score and was not interviewed.

The two candidates hired to fill the open positions were both in their thirties. Warren was sixty years old at the time of the promotion decision.

## Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

## Analysis

Tupelo contends that (1)Warren is unable to make out a prima facie case of discrimination: and, (2) that even if he could make out a prima facie case, he can not carry his ultimate burden of persuasion.

In a failure to promote or hire age discrimination case an employee must prove four

elements to meet their *prima facie* burden. All parties agree the plaintiff must show that (1) he was over 40; (2) he was qualified for the position; (3) he was not promoted; and (4) the position was filled by someone younger or the failure to promote was due to his age. *See Runnels v. Texas Children's Hosp. Select Plan*, 167 Fed. Appx. 377, 382 (5th Cir. 2006) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)). Once a plaintiff establishes a *prima facie* a presumption of discrimination arises. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Id*. This rebuts the presumption raised by the *prima facie* case. *Id*. at 255. The ultimate burden then rests on the plaintiff to show the employment decision was made because of unlawful intentional discrimination. *Id*.; *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995).

For the purposes of this motion, the defendant concedes that Warren meets all the *prima facie* elements except that he was not qualified for the position. Warren counters that he was more qualified for the position than any of the other candidates.

Tupelo argues that Warren was not qualified because he did not work everyday as a lineman, but instead had been employed as an operations serviceman since October of 1995. Further, at the time Warren worked full time as a lineman he had topped out as a Lineman II. Tupelo asserts that since Timmons became in charge of promotions, fourteen years earlier, all foreman positions had been filled by individuals who had risen to Lead Lineman.[2] Finally, Warren did not have a commercial driver's license which was required for the position.

Based on the documents and testimony submitted it appears that the qualifications for the

---

[2] No evidence of promotion practices prior to Timmons' tenure was submitted to the court.

job were amorphous. None of the candidates were able to meet all the listed qualifications. In fact, it appears that Timmons never really expected that anyone could meet all the requirements. The posted qualifications themselves came with a caveat that "[t]he requirements listed below are representative of the knowledge, skill, and/or ability required." Qualifications that are representative of those needed are substantively different than qualifications that are required to be considered. This is evident from the fact that none of the candidates met all the posted requirements, yet the two positions were filled.

Timmons admits that all the candidates had different experiences and that each would have deficiencies in some areas. Timmons further admitted that Warren had experience with all the areas needed for the foreman position. The evidence shows that Warren was doing exactly the type of work for which a CDL license is required. Additionally, neither of the two candidates chosen by Tupelo had CDL licenses.

Despite the amorphous qualifications there is one area where Warren lacks the experience of the other foremen. Every person deposed, save Warren, stated that foremen were promoted from the ranks of lead linemen. It is undisputed that Warren had never been a lead lineman.[3] While Warren was working as an operations serviceman, the two candidates chosen to fill the positions were working as lead linemen. These men were then promoted to be foremen of the crew for which they were lead linemen.

Even though this requirement was not listed in the posted job description it is clear Tupelo's practice made it a qualification for the foreman position. Warren does not have that

---

[3] Warren claims this is a distinction without a difference. He states that he has done all the work required of a lead lineman. This may well be true, but it does not negate the qualification. The consistent deposition testimony of other Tupelo employees show that lead lineman is a step above Warren's terminus on the lineman career path.

required qualification. This is an objective qualification Warren lacks and therefore his *prima facie* case fails.

Even if being a lead lineman was not an objective qualification[4] for the foreman position, Warren's claim would fail. Assuming *arguendo* that Warren could make out a *prima facie* case, he still could not carry his ultimate burden. Tupelo offers multiple reasons for not promoting Warren. The court sees no reason to address each of these arguments. The fact that Warren was not a lead lineman is still enough for a grant of summary judgment. Under this scenario Warren would be qualified for the job, but Tupelo would have chosen candidates that were promoted sequentially through the ranks. Since this sequential promotion was the ordinary practice and that practice was non-discriminatory, Tupelo has rebutted Warren's *prima facie* case.

The ultimate burden then falls to Warren. For his claim to succeed, Warren must show that the proffered reason was merely a pretext for not promoting him. First, Warren tries to overcome Tupelo's asserted non-discriminatory reason by reasserting the evidence originally presented to make his *prima facie* case. He argues he was more qualified than the other two candidates based on the posted job requirements. As the court found previously, the job requirements were amorphous. When it serves his purposes, Warren himself argues that the job description was generalized. While Warren did have ten years of journeyman lineman experience as required by the job description, he did not meet all the qualifications. The two individuals hired did not have the ten years of required experience[5], but they were acting as lead

---

[4] Subjective qualifications should not be considered at the *prima facie* stage. Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 681-82 (5th Cir. 2001). However, "[s]ubjective criteria necessarily and legitimately enter into personnel decisions involving supervisory positions. Risher v. Aldridge, 889 F.2d 592, 597 (5th Cir. 1989).

[5] Warren makes much out of this ten years of experience requirement. Included in his argument is a long section relating to Timmons' attempt to have the job description changed. Warren has no trouble disregarding other specific provisions of the job description when he does not meet those requirements.

lineman. Warren had never been a lead lineman. He was also not working as an everyday lineman, but was instead working as an operations serviceman.

Warren next claims that he can prove pretext because Tupelo did not use its standard method in deciding who to promote. It appears that prior to June 2004, Timmons interviewed the candidates who applied and made his decision. However, in June 2004, Timmons had other electric department supervisors evaluate the candidates. Timmons then interviewed the candidates who received the highest ratings and made his own decision. This process was used once before the instant action. The process was used again in filling the two positions in question here. Warren claims that the process was designed to deny him promotion. Deviation from normal hiring procedures does not conclusively establish improper discrimination or pretext. *Risher*, 889 F.2d at 597. In this instance there is no evidence that the use of the process was designed to impermissibly discriminate against Warren or anyone else. The process itself is not fundamentally flawed. When properly implemented it may well give important information to Timmons in making his hiring decisions. In this case it seems unlikely that the added step was helpful. Deposition testimony shows the evaluators were incapable of understanding much of the questionnaire presented to them.

Warren also asserts that if this is the proper process the failure to include the third department foreman, Spencer Gunn, indicates discrimination. It is alleged that Gunn thought highly of Warren. Following that logic, Warren claims he would have been rated higher by Gunn and would have had a better opportunity to receive the promotion. He claims that Timmons knew this was the case and purposefully left Gunn out of the process.

It is unclear that a specific process was in place. Other evaluators were used for only the second time. There is no written policy about the evaluation process. The historical evidence that

all foremen were involved in the process previously has little weight in showing that all foremen should have been involved on this occasion. The process had only gone on once before its instant application. The two foremen involved last time were both involved again. Finally, the difference between those two foremen and Gunn was length of tenure. Gunn was only recently promoted at the time of the evaluation process. It is certainly reasonable to rely on one's longest term employees in making a decision. Especially, in light of the fact that these two foremen were who was relied on in recommending Gunn for promotion.

Even if this was a breakdown in procedure, it does not evidence discrimination. Further, if there was any discrimination against Warren, there is no evidence that this discrimination was based on age.

Finally, Warren argues that Timmons refusal to earlier hire a right of way foreman evidences discriminatory intent. On April 25, 2005, Tupelo posted an opening for an electric right-of-way foreman.[6] Warren signed up to be considered for the position. Nothing in the record indicates who else signed up for the position.[7] Warren asserts that Timmons did not fill the position because he did not want Warren to be a foreman presumably because of his age. However, Warren offers nothing to show that the decision was due to age. Nor does he indicate who else applied for the position. Timmons states that he consolidated the two right-of-way crews under one foreman. He admits that this had never been done before, but states that he had confidence in the other right-of-way foreman who had requested a larger crew. While doubtful, it might be possible a jury would use this information to infer a bias against Warren. It is not

---

[6] This position is substantially similar to the line crew foreman position.

[7] Warren's affidavit states that he "was by far the most qualified person who applied for the right-of-way foreman job when it was posted in 2005."

possible that a jury could use this information to find age discrimination was the reason Warren was not hired for the two positions that would open one year later.

## Conclusion

There is little doubt that Warren is a good and hardworking employee. However, failure to promote a good employee is not actionable. Warren can not establish that he was denied promotion because of age discrimination. The parties have submitted extensive briefs and hundreds of pages of deposition testimony. Other than a hunch on the part of Warren, nothing points to age discrimination. No reasonable jury could infer that Warren was entitled to relief.

Defendant's motion for summary judgment is GRANTED.

A separate judgment will be issued this date, pursuant to Federal Rule of Civil Procedure 58.

This the 29th day of September, 2008

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**